

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00441-CR
## No. 10-10-00442-CR

## EX PARTE MARIA GONZALES

## From the County Court at Law No. 2
## McLennan County, Texas
## Trial Court Nos. 20100004HC4 and 20100005HC4

## MEMORANDUM  OPINION

In February of 2009, Appellant Maria Gonzales was arrested for shoplifting and charged with Class B misdemeanor theft (over $50 but under $500).  After bonding out of jail, she was taken into custody by Immigration and Customs Enforcement and put into removal proceedings because she had no legal status in the United States.  Gonzales posted bond and was released pending the resolution of her immigration case.  Two months later, she was again arrested for shoplifting and charged with Class B misdemeanor theft (over $50 but under $500).

On August 6, 2009, Gonzales entered pleas of nolo contendere and received community supervision on both cases under a plea bargain.  The hearing on the pleas

was not recorded. In each case, Gonzales signed a "waiver of jury trial and plea of nolo contendere" that provided in part that her plea might result in her deportation, exclusion of admission to this country, or denial of naturalization under Federal law.

In May 2010, Gonzales appeared in immigration court; her application for relief was denied and she was ordered "removed" because, she alleges, her second misdemeanor theft conviction rendered her ineligible for cancellation of removal. *See* 8 U.S.C. §§ 1227(a)(2)(A)(ii), 1229b(b); *see generally Ex parte Rodriguez,* ___ S.W.3d ___, ___, 2012 WL 1429559, at *2-3 (Tex. App.—San Antonio Apr. 25, 2012, no pet. h.).

In June 2010, Gonzales filed the two underlying applications for habeas corpus under article 11.072 of the Code of Criminal Procedure. She alleged that her pleas of nolo contendere were involuntary and sought to have her convictions set aside because her counsel was ineffective and because she was not properly admonished by the trial court.

After an evidentiary hearing, the trial court entered an order denying relief in each case.[1] The trial court made the following findings:

- Gonzales's pleas of nolo contendere were free and voluntary, and she understood the consequences of her plea.

- Gonzales was aware that there were immigration consequences to her pleas.

- Gonzales had retained an immigration attorney who was advising her during her criminal cases.

- In her criminal cases, Gonzales had a Spanish-speaking attorney, and a court-appointed interpreter was present during the proceedings.

---

[1] The trial judge in the criminal cases recused himself in the habeas cases because he was a witness.

- Gonzales signed written waivers that contained an admonishment that "my plea of guilty or nolo contendere may result in my deportation, exclusion of admission to this country, or denial of naturalization under Federal law."

Gonzales appeals, asserting in two issues that the trial court erred in denying habeas relief because her attorney was ineffective and because the trial court did not properly admonish her of the immigration consequences of her pleas.

> We review the trial court's denial of a habeas corpus application for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). An applicant who asserts that her plea was not knowing and voluntary must prove her claim by a preponderance of the evidence. *Id.* We review "the record evidence in the light most favorable to the trial court's ruling and [we] must uphold that ruling absent an abuse of discretion." *Id.* We give almost total deference to the trial court's findings that are "'based upon credibility and demeanor.'" *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)).

*Rodriguez,* ___ S.W.3d at ___, 2012 WL 1429559, at *1.

> In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). In an article 11.072 habeas case, such as the one before us, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). "There is less leeway in an article 11.072 context to disregard the findings of a trial court" than there is in an article 11.07 habeas case, in which the Court of Criminal Appeals is the ultimate fact finder. *Id.* … "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing *Ex parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim. App. 1998); *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994)).

*Ex parte Ali, 368* S.W.3d 827, 831-32 (Tex. App.—Austin 2012, no pet. h.). We must also defer "not only to all implicit factual findings that the record will support in favor of a trial court's ruling, 'but also to the drawing of reasonable inferences from the facts.'"

*Amador v. State,* 221 S.W.3d 666, 675-76 (Tex. Crim. App. 2007).

We evaluate the effectiveness of trial counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hernandez v. State,* 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The appellant bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail, the appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland,* 466 U.S. at 687-88, 694.

In the context of a guilty plea, an appellant must show that his counsel's advice about the guilty plea did not fall within the wide range of competence demanded of attorneys in criminal cases and that, but for trial counsel's errors, there is a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Moody,* 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

*Ex parte Olvera,* ___ S.W.3d ___, ___, 2012 WL 2336240, at *2 (Tex. App.—Dallas June 20, 2012, no pet. h.).

In 2010, the Supreme Court issued its opinion in *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), in which it explained a criminal defense attorney's duty to advise his client about the potential immigration consequences of a plea. In that case, Padilla pleaded guilty to an offense that subjected him to automatic deportation. The Supreme Court recognized that immigration law is complex and stated that when "the deportation consequences of a particular plea are unclear or uncertain … a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 1483. But the Court also held that "when the deportation consequence is truly clear, the duty to give correct advice is equally clear." *Id.* The Court held that "constitutionally competent counsel would have advised [Padilla] that his conviction … made him subject to automatic deportation." *Id.* at 1478, 1486-87. Because counsel did not so advise Padilla, the Court concluded that counsel was not constitutionally competent and that Padilla satisfied the first prong of *Strickland*. *Id.; see Ex parte Martinez,* No. PD-1338-11, 2012 WL 1868492, at

*4-5 (Tex. Crim. App. May 16, 2012) (not designated for publication) (when deportation and exclusion from this country are automatic consequences of a guilty plea, it is not enough to advise noncitizen client that he faces the possibility of deportation or exclusion).

*Olvera*, ___ S.W.3d at ___, 2012 WL 2336240, at *3.

Gonzales alleged that Paul Flores, her criminal defense attorney, was ineffective because he did not properly warn her of the severe immigration consequence by pleading nolo contendere to the two theft charges, and that if she had known of the consequence, she would have chosen to try her cases. Gonzales testified that she was innocent and that she told Flores she was concerned about the repercussions to her immigration status because her immigration attorney had told her not to plead guilty. She said that Flores told her that there was no problem because hers were "minor cases" and would not affect her immigration situation. She also said that Flores told her that she would be getting "deferred probation." Gonzales admitted to signing the waivers but said that she did not know what was in them. When she appeared in court for the plea hearing, she said that she was told she could not get "deferred probation" because of the second theft charge.

Flores testified. He said that he told Gonzales to have her immigration attorney contact him, but that did not happen. Flores testified that he knew that Gonzales was eligible for cancellation of removal with one theft conviction but that pleading to the two theft charges would make her deportable and inadmissible: "what I researched was that one conviction of theft, she would have relief available to her because it's a petty theft exception. … So I knew if she pled to two - - I'm familiar with the provision

- - I knew if she pled to two, it would make her deportable, it would make her inadmissible. And I advised her that before she agreed to plead."

He said that he advised Gonzales of that repercussion (that it "would" make her deportable and inadmissible) but that she agreed to plead her cases because she did not want to risk trial and going to jail if convicted. Flores related that being jailed upon her arrest had been emotionally difficult on Gonzales and that she wanted her cases to be finished without the risk of jail time. Flores denied telling Gonzales that pleading to both charges would not affect her immigration situation because they were minor offenses. He also said that he is fluent in Spanish and that he explained to her the paperwork that she was signing in Spanish.

In denying habeas relief and with its findings, the trial court plainly did not find Gonzales credible but found Flores credible. And in finding that Gonzales's pleas were voluntary, the trial court implicitly found that Gonzales did not receive ineffective assistance of counsel with respect to whether Flores warned Gonzales of the immigration consequence by pleading nolo contendere to the two theft charges. *Cf. Olvera*, ___ S.W.3d at ___, 2012 WL 2336240, at \*3 ("The record supports Olvera's argument that counsel did not satisfy his duty to give adequate advice about the immigration consequences. Counsel testified that he told Olvera he *could* be deported or denied reentry into this country, not that a guilty plea would result in automatic deportation and denial of reentry."). Because the record supports these findings, and because we must give almost total deference to them, the trial court did not abuse its

discretion in denying Gonzales's habeas application on the ground that she received ineffective assistance of counsel. Issue one is overruled.

In her second issue, Gonzales asserts that the trial court erred in refusing to grant habeas relief because the trial judge in her criminal cases did not properly admonish her of the immigration consequences of her pleas. Before accepting a plea of nolo contendere, the trial court must admonish the defendant of: "(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law; … ." TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (West Supp. 2011). That article further provides:

> (d) The court may make the admonitions required by this article either orally or in writing. If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea. If the defendant is unable or refuses to sign the statement, the court shall make the admonitions orally.

*Id.* art. 26.13(d).

As stated above, no record was made of the plea hearing. The Honorable Michael Gassaway, who was the trial judge in the criminal cases, testified that he could not recall exactly how he admonished Gonzales in her cases. He said that he typically asked the defendant if he or she went over the paperwork with her lawyer and understood it, and he would not proceed with accepting a plea if the defendant did not acknowledge understanding what was in the paperwork. Judge Gassaway testified that he almost always covered the immigration issue, and with a defendant using an

interpreter, that suggested to him to pay particular attention to the immigration admonishment. Flores testified that he explained the paperwork to Gonzales in Spanish.

As noted above, Gonzales signed a "waiver of jury trial and plea of nolo contendere" that provided in part that her plea might result in her deportation, exclusion of admission to this country, or denial of naturalization under Federal law. It also stated: "I have read each of the above and have had them explained to me by my attorney/the Court. I understand the consequences of my plea, and I still insist upon entering my plea in this case, and I request that the Court accept this acknowledgment."

Because the habeas record supports the trial court's explicit and implicit findings that Gonzales was admonished in accordance with article 26.13, the trial court did not abuse its discretion in denying Gonzales's habeas applications on the ground that she was not properly admonished. Issue two is overruled.

Having overruled both issues, we affirm the trial court's order.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 23, 2012
Do not publish
[CR25]